IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| WILLIAM FLETCHER DEWAYNE STEWART, II, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:21-cv-00735-DGK ) |
| ANDREW WASHBURN, JOSEPH PICCININI, and KENNETH BLEWITT, *in their individual capacities*, and JACKSON COUNTY, MISSOURI, | ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

From December 21, 2015 to January 22, 2018, Plaintiff William Fletcher Dewayne Stewart, II, was detained in the Jackson County Detention Center ("JCDC") awaiting trial. Plaintiff has brought this action against the following defendants: (1) Jackson County, Missouri; (2) Joseph Piccinini, the Director of the Jackson County Department of Corrections during Plaintiff's detention; (3) Kenneth Blewitt, a former corrections officer at JCDC; and (4) Andrew Washburn, another former corrections officer at JCDC. Plaintiff asserts various claims for violations of his Fourteenth Amendment rights under 42 U.S.C. § 1983.[1]

Now before the Court is Defendants' Joint Motion to Dismiss for failure to state a claim. ECF No. 15 For the reasons stated below, the motion is GRANTED IN PART.

---

[1] Plaintiff asserts that Defendants violated his Fourth Amendment and Fourteenth Amendment rights. However, since Plaintiff's complaint arises from his pretrial detainment and not from any search or seizure, the Fourteenth Amendment is the only provision relevant to Plaintiff's claims. *See Holden v. Hirner*, 663 F.3d 336, 341 (8th Cir. 2011) ("Pretrial detainee § 1983 claims are analyzed under the Fourteenth Amendment's Due Process Clause . . . .").

## Standard of Review

A claim may be dismissed if it fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[]." *Stodghill v. Wellston School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008). However, "the Court is not bound to accept as true a legal conclusion couched as a factual allegation." *Warmington v. Bd. of Regents of Univ. of Minn.*, 998 F.3d 789, 796 (8th Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Plaintiff need not demonstrate the claim is probable, only that it is more than just possible. *Id.*

In reviewing the complaint, the Court construes it liberally and draws all reasonable inferences from the facts in Plaintiff's favor. *Monson v. Drug Enforcement Admin.*, 589 F.3d 952, 961 (8th Cir. 2009). The Court generally ignores materials outside the pleadings but may consider materials that are part of the public record or materials that are necessarily embraced by the pleadings. *Miller v. Toxicology Lab. Inc.*, 688 F.3d 928, 931 (8th Cir. 2012). Matters necessarily embraced by the pleadings include "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (quoting *Miller*, 688 F.3d at 931 n.3). Plaintiff has incorporated in the operative complaint a report from the Jackson County Department

of Corrections Task Force which was submitted to the Jackson County Executive and the Jackson County Legislature in October 2015 ("2015 Report"). ECF No. 13-2. Among its findings, the 2015 Report concluded that the JCDC facility was in need of repairs and upgrades and that JCDC was significantly short staffed. *Id.* at 3, 7. Plaintiff also attached a grand jury report regarding JCDC which was submitted to the Jackson County Circuit Court in May of 2018 ("Grand Jury Report").[2] ECF No. 13-3. Finally, Plaintiff attached a number of his Formal Inmate Grievance Forms ("Grievance Forms"). ECF No. 13-6. The Court considers these documents in ruling on this motion to dismiss.[3]

## Procedural History

Plaintiff filed this action in Jackson County Circuit Court on August 2, 2021. Notice of Removal, ECF No. 1. Defendants removed to this Court on October 8, 2021. *Id.* Plaintiff later requested leave to file an Amended Complaint, which the Court granted. Order, ECF No. 12.

The Amended Complaint, ECF No. 13, asserts five claims under § 1983 for violations of his Fourteenth Amendment rights. Plaintiff's first claim—against Jackson County and Defendant Piccinini in his individual capacity—seeks both compensatory and punitive damages as a result of the conditions of Plaintiff's confinement in JCDC (Count I). Plaintiff also brings a claim against Defendant Blewitt in his individual capacity for use of excessive force (Count III); and against Defendant Washburn in his individual capacity for sexual harassment (Count V).

Plaintiff also brings claims against Jackson County and Defendant Piccinini in his individual capacity for failure to adequately staff and train JCDC personnel resulting in Defendant

---

[2] During each grand jury term, at least three members of a grand jury are required "to visit the jail of their county, and examine the condition thereof, and inquire into the treatment of the prisoners, and make a report thereof to the court." Mo. Rev. Stat. § 221.300.

[3] Plaintiff also attached a number of news articles, ECF Nos. 13-1, 13-4, 13-5. The Court does not consider these in ruling on this motion.

3

Blewitt's use of force (Count II), and Defendant Washburn's sexual harassment (Count IV).[4] Am. Compl.

Defendants moved to dismiss all of Plaintiff's claims. Mot., ECF No. 15.

**Factual Background**

Plaintiff alleges the following facts, which the Court accepts as true for the purposes of this motion: Defendant Piccinni became acting director of the Jackson County Department of Corrections ("DOC") in June of 2015. Am. Compl. ¶ 20, ECF No. 13. Plaintiff was held in pre-trial detention at JCDC from June 20, 2016, through May 15, 2017.[5] Am. Compl. ¶ 3. Defendant Piccinni remained director of the DOC throughout Plaintiff's incarceration. Am. Compl. ¶ 5. Plaintiff had torn ligaments in both knees and had to be transported around JCDC and to court appearances via wheelchair. Am. Compl. ¶ 76.

Regarding his conditions of confinement claim, Plaintiff alleges that during his detention he was subjected to the following: From June 20, 2016, to August 4, 2016, Plaintiff received no clean bedsheets. Grievance Form 1395, 1446, ECF No. 13-6; Am. Compl. ¶ 101.b. He was only able to receive clean bedsheets after going on food strike. *Id.* From June 20 to June 30, 2016, Plaintiff was not provided a shower. Grievance Form 1403, ECF No. 13-6; Am. Comp. ¶ 101.c. At 7 pm on September 2, 2016, Plaintiff's cell flooded. Grievance Form 1425, ECF No. 13-6;

---

[4] The Amended Complaint includes language which could indicate that Plaintiff also brought official capacity claims against Defendants Blewitt, Piccinini, and Washburn. *See* Am. Compl. ¶ 5, 6, 8 (pleading that the defendants acts and/or omissions "were done individually and within the course and scope of [their] employment and/or agency as an employee of [Jackson County]"). However, Plaintiff's response to the instant motion clarifies that the Amended Complaint does not bring any official capacity claims. The Court therefore does not read the Amended Complaint to include any official capacity claims, and to the extent the Amended Complaint does include official capacity claims, they are DISMISSED WITHOUT PREJUDICE.

[5] Elsewhere in the Amended Complaint, Plaintiff states that he was housed at JCDC from December 21, 2015, through January 22, 2018. Am. Compl. ¶ 3, ECF No. 13. Because all of Plaintiff's claims arise between the dates of June 20, 2016 and May 15, 2017, and because Grievance Form 1395 notes that Plaintiff came to JCDC on June 20, 2016, the Court uses this date range. *See* Grievance Form 1395, ECF No. 13-6.

Am. Comp. ¶ 101.g. While attempting to inform a corrections officer of the issue, Plaintiff fell, hitting his head and back and again injuring one of his knees. *Id.* On September 18, 2016, Plaintiff's cell flooded with sewage from 6:30 p.m. to 10:30 p.m., during which time Plaintiff was not allowed to leave his cell. Grievance Form 1438, ECF No. 13-6; Am. Compl. ¶ 101.k. Plaintiff's cell flooded again around 10 p.m. on September 23, 2016. *Id.* Plaintiff was only able to leave the flooded cell around 11:30 a.m. the next day, when he fell in the water and corrections officer removed him so that he could receive medical treatment. *Id.* Plaintiff also alleges that all inmates were exposed to high levels of filth and mold—in cells and latrines, as well as in the shower and kitchen areas—on a constant basis. Am. Compl. ¶ 103, 104.

Regarding his excessive force claim, Plaintiff alleges that, at 1:10 p.m. on August 4, 2016, Defendant Blewitt came to Plaintiff's cell to get Plaintiff into restraints for a court appearance. Am. Compl. ¶ 77. After Plaintiff was in the restraints, Defendant Blewitt shoved Plaintiff backwards and struck Plaintiff in the chest with his forearm or elbow. Am. Compl. ¶ 79. This had the effect of knocking Plaintiff backwards onto a desk, after which Defendant Blewitt grabbed Plaintiff, threw him onto a bed in the cell, and began choking him. Am. Compl. ¶ 79–80. Multiple other corrections officers forcibly restrained Defendant Blewitt, and Defendant Blewitt's supervisor, Lieutenant Johnson, banned Defendant Blewitt from working on Plaintiff's floor. Am. Compl. ¶ 81–82.

Regarding his sexual harassment claim, Plaintiff alleges that, on August 19, 2016, he asked Defendant Washburn for the time, to which Defendant Washburn responded that it was "[t]ime to see how wet my mouth is." Am. Compl. ¶ 91–92. Later that evening, Defendant Washburn transported Plaintiff—via his wheelchair—to the shower, and publicly stated that that Plaintiff

made Defendant Washburn's "butthole pucker up." Am. Compl. ¶ 93. During a cell inspection two days later, Defendant Washburn also asked Plaintiff if he had an erection. Am. Compl. ¶ 94.

## Discussion

Plaintiff does not contest the dismissal of his claims against Jackson County and Defendant Piccinini for failure to adequately staff and train JCDC personnel. Thus, Defendants' motion is GRANTED in regards to Plaintiff's Counts II and IV, and these claims are DISMISSED WITHOUT PREJUDICE. Defendants' motion in regards to Plaintiff's Count I, III, and V is addressed below.

### I. Defendants' motion is DENIED in regards to Plaintiff's conditions of confinement claim against Defendant Piccinni.

Defendants argue that Plaintiff's § 1983 conditions of confinement claim against Defendant Piccinini should be dismissed because Plaintiff has not alleged that Defendant Piccinini demonstrated deliberate indifference to a violation of Plaintiff's Fourteenth Amendment rights. Suggestions in Supp. at 10–11, ECF No. 16.

Pretrial detainee § 1983 conditions of confinement claims arise under the Fourteenth Amendment Due Process Clause. *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 906 (8th Cir. 2020). A pretrial detainee's due process rights are violated if the conditions of his confinement constitute punishment. *Owens v. Scott Cnty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003); *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979) ("Due process requires that a pretrial detainee not be punished."). This is because "[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime." *Bell*, 441 U.S. at 536. "Rather, he has received only a 'judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). Thus, a pretrial detainee bears a lighter burden to show a constitutional violation resulting from the conditions of

his confinement under the Fourteenth Amendment than a prisoner bears—post-conviction—under the Eighth Amendment. *Morris v. Zefferi*, 601 F.3d 805, 809 (8th Cir. 2010).

A detention center may subject pretrial detainees "to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 536–37. A plaintiff can establish that the conditions of his pretrial confinement amounted to punishment by showing that that the conditions were intentionally punitive. *Stearns*, 957 F.3d 902, 907 (8th Cir. 2020) (citing *Bell*, 441 U.S. 538–39). "Alternatively, if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.* "In considering whether the conditions of pretrial detention are unconstitutionally punitive, [the Court considers] the totality of the circumstances of a pretrial detainee's confinement." *Id.* at 810.

As a threshold matter, the Court concludes that Plaintiff has alleged a deprivation of his Fourteenth Amendment right to due process. Plaintiff received no clean bedsheets for over forty days, and no shower for ten days. *See Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 909 (8th Cir. 2020) ("[T]he length of time a prisoner is subjected to harsh conditions is a critical factor in [the Court's] analysis." (quoting *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996))). In addition, Plaintiff was left in a cell flooded with sewage. *Owens*, 328 F.3d 1026, 1027 (8th Cir. 2003) ("Indeed, we have noted the need to be 'especially cautious about condoning conditions that include an inmate's proximity to human waste.'" (quoting *Fruit v. Norris*, 905 F.2d 1147, 1151 (8th Cir. 1990))). Given that Plaintiff relied on a wheelchair to ambulate while outside of his cell—and thus was neither a flight risk nor likely a significant security risk, the Court fails to find a legitimate governmental purpose in subjecting Plaintiff to such conditions. *Morris v. Zefferi*,

7

601 F.3d 805, 810–811 (8th Cir. 2010) (noting that preventing escape is a legitimate governmental purpose); s*ee also Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir.1989) ("[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of time.").

However, in order to state a § 1983 conditions of confinement claim against a detention center official, a plaintiff must also allege that the official was deliberately indifferent to the risk of harm posed by the conditions of the confinement. *See Morris*, 601 F.3d at 809. This requires a showing that "the official[] knew of facts from which [he] could infer a substantial risk of serious harm existed and that the official[] drew that inference." *Lewis v. Jackson Cnty., Missouri*, No. 4:21-CV-00230-RK, 2021 WL 5867649, at *5 (W.D. Mo. Dec. 10, 2021) (quoting *Frye v. Pettis Cty. Sheriff Dep't*, 41 F. App'x 906, 908 (8th Cir. 2002)).

Proof of actual knowledge is not required to establish notice of a substantial risk of serious harm. The Eighth Circuit has "consistently held that reckless disregard on the part of a supervisor will suffice to impose liability." *Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989). "This requires more than mere negligence yet less than malicious or actual intent." *Id.* (quotation omitted). "Thus, the issue is not whether [the detention center official] had actual knowledge of the violations, but whether they knew or should have known of them." *Id.* In addition, § 1983 liability "requires a causal link to, and direct responsibility for, the deprivation of rights." *Id.* (quoting *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007)).

The 2015 Report noted the need to "improve overall conditions at the JCDC facility," and stated that "[t]here is an immediate need to explore funding to upgrade and repair the facility . . . ." 2015 Report at 7, ECF No. 13-2. Further, the Amended Complaint notes that the mold and filth issues were widespread within JCDC. Am. Compl. ¶ 103, 104.

In addition, the Grand Jury Report noted that an audit of JCDC conducted in 2017 listed

> several findings concerning the lack of cleanliness at [JCDC]. Specifically, that audit noted that the modules were not clean and that the inmates made complaints that they were not provided cleaning supplies to clean their living spaces. Those findings also noted several maintenance issues with toilets, sinks, and showers which caused standing water and leaks.

Grand Jury Report at 45, ECF No. 13-3. Finally, the Grand Jury Report—relying on JCDC's records of detainee complaints—recounted complaints from multiple inmates that they "did not receive clean bedding or clean clothes." *Id.* at 48. For example, the report noted

> [one] grievance detail[ing] that clothing was only changed once every two weeks. In [another] report, the Grand Jury learned that an inmate waited 4 months to simply receive a set of clean sheets and that the sheets he was sleeping on had become black with dirt by the time they were returned. Likewise, in 2016, multiple inmates made complaints about the infrequent ability to shower. One grievance detailed that an inmate was not allowed to shower for ten days.

*Id.* Given the widespread reports of the conditions at JCDC, the Court finds that Plaintiff has sufficiently pled that Defendant Piccinni had notice of facts from which he could infer that Plaintiff was under punitive confinement.

Likewise, given the extended period of time in which reports regarding the conditions at JCDC were available—beginning in October 2015 (for the 2015 Report) and continuing through and after Plaintiff's detention (as detailed in the Grand Jury Report)—Plaintiff has sufficiently alleged that Defendant Piccinni was aware of, or at least should have been aware of, the conditions at JCDC. *See* Grand Jury Report at 42, ECF No. 13-3; *Johnson v. Douglas Ctny. Med. Dep't*, 725 F.3d 825, 829 (8th Cir. 2013) (noting that a plaintiff may establish deliberate indifference or tacit authorization to constitutional violations if "the incidents occurred over a course of time").

Finally, because Plaintiff has sufficiently alleged that his confinement in such conditions was a direct result of Defendant Piccinni's failure to rectify those conditions at JCDC, Plaintiff has

9

stated a § 1983 conditions of confinement claim against Defendant Piccinni. Defendants' motion is therefore DENIED in regards to this claim.[6]

## II. Defendants' Motion is DENIED in regards to Plaintiff's conditions of confinement claim against Jackson County.

Defendants also argue that Plaintiff's § 1983 conditions of confinement claim against Jackson County should be dismissed because Plaintiff has not pled a violation of his Fourteenth Amendment rights that was caused by an official policy or custom. Suggestions in Supp. at 7–9.

To state a claim for relief against a local government under § 1983, *Monell v. Department of Social Services* requires a plaintiff plead a deprivation of federal constitutional or statutory rights caused either by the execution of a "policy statement, regulation, or decision officially adopted and promulgated by [the municipality's] officers," or by the municipality's execution of a custom "so permanent and well settled as to constitute a 'custom or usage' with the force of law." 436 U.S. 658, 690–691 (1978). The Amended Complaint makes no allegations that such a policy existed. However, Plaintiff sufficiently alleges facts showing the existence of an official custom whereby JCDC inmates were subjected to punitive conditions.

In order to plead a deprivation resulting from an official custom, a plaintiff must allege

> (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

As the Court noted in Part I, the Amended Complaint alleges facts showing that the punitive conditions in JCDC were widespread, and lasted at least from October 2015 to May 2018. As

---

[6] To the extent Defendants' argue that Defendant Piccinini is entitled to qualified immunity, the motion is DENIED for the reasons stated in Part IV, below. *See* Suggestions in Supp. at 6, ECF No. 16.

such, Plaintiff has stated a § 1983 conditions of confinement claim against Jackson County. *See also Lewis v. Jackson Cnty., Missouri*, No. 4:21-CV-00230-RK, 2021 WL 5867649, at *6 (W.D. Mo. Dec. 10, 2021). Defendants' motion is therefore DENIED.

### III. Defendants' motion is GRANTED in regards to Plaintiff's Claim for Punitive Damages against Jackson County.

Plaintiff's Count I also includes a claim for punitive damages against Jackson County. Because "a municipality is immune from punitive damages under 42 U.S.C. § 1983," Plaintiff's claim for punitive damages against Jackson County is DISMISSED WITH PREJUDICE. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).

### IV. Defendants' Motion is DENIED in regards to Plaintiff's claims against Defendants Blewitt and Washburn.

Finally, Defendants assert that Defendant Blewitt is entitled to qualified immunity on Plaintiff's excessive force claim (Count III), and that Defendant Washburn is entitled to qualified immunity on Plaintiff's sexual harassment claim (Count V). Suggestions in Supp. at 6, ECF No. 16.

"Qualified immunity shields a public official from suit for civil damages when his 'conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Bernini v. City of St. Paul*, 665 F.3d 997, 1002 (8th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to establish qualified immunity in a motion to dismiss, "defendants must show that they are entitled to qualified immunity on the face of the complaint." *Dadd v. Anoka Cty.*, 827 F.3d 749, 754 (8th Cir. 2016) (quoting *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005)). This requires a defendant to show either 1) that the pleadings, viewed in the light most favorable to the plaintiff, do not demonstrate a violation of a federal right of which a reasonable person would have known, or 2) that any allegedly violated

right was not clearly established at the time of the alleged violation. *Dollar Loan Ctr. of S. Dakota, LLC v. Afdahl*, 933 F.3d 1019, 1024 (8th Cir. 2019).

Defendants' motion and reply do nothing more than state that qualified immunity exists as a doctrine. Suggestions in Supp. at 6, ECF No. 16; Reply at 4, ECF No. 24. Defendants make no effort to argue either prong of the qualified immunity analysis as to either Defendant Blewitt or Washburn. *See, e.g., United States v. Guzman-Tlaseca*, 546 F.3d 571, 578 (8th Cir. 2008) ("It is not this court's job to research the law to support an appellant's argument." (internal quotation marks and alterations omitted)); *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel."); *New v. Borg-Warner Corp.*, No. 13-00675-CV-W-DGK, 2015 WL 5166923, at *5 (W.D. Mo. Sept. 3, 2015) ("[T]he Court is neither required nor inclined to perform legal research for the parties."); *Gamez v. Colvin*, No. 13-4199-CV-W-DGK-SSA, 2014 WL 4112925, at *4 (W.D. Mo. Aug. 19, 2014) ("Because Plaintiff did not develop her argument sufficiently to guide the Court, it is rejected."); Fed. R. Civ. P. 7(b)(1)(B) (requiring movants to "state with particularity the grounds for seeking the order").

The motion is DENIED as to Plaintiff's Count III and V.[7]

**Conclusion**

Defendants' motion to dismiss for failure to state a claim is GRANTED IN PART. Plaintiff's claim for punitive damages against Defendant Jackson County in Count I is

---

[7] The Court notes that its ruling is based solely on these procedural deficiencies; it *has not* considered the merits of Defendants' motion regarding qualified immunity—to the extent Defendants argued those merits—and makes no substantive ruling on it. *See Wolfe v. City of Aurora*, No. 08-05087-CV-SW-DGK, 2011 WL 1467669, at *5 (W.D. Mo. April 18, 2011) ("The Court cautions the Defendants that its denial of summary judgment is on the basis of disputed facts and their failure to respond to this claim on summary judgment, *not* qualified immunity. Accordingly, an interlocutory appeal is not appropriate and this case will not be stayed for the Defendants to pursue one. *See Langford v. Norris*, 614 F.3d 445, 455 (8th Cir. 2010) (noting that the interlocutory appeal of a denial of qualified immunity "extends only to abstract issues of law").").

DISMISSED WITH PREJUDICE. Plaintiff's Count II and IV are DISMISSED WITHOUT PREJUDICE. Defendants' motion is DENIED in regard to all other claims.

**IT IS SO ORDERED.**

Date: June 8, 2022 /s/ Greg Kays
GREG KAYS, JUDGE
UNITED STATES DISTRICT COURT